1 | **POLSINELLI LLP**
  | ZACHARY E. ROTHENBERG (SBN 215404)
2 | zrothenberg@polsinelli.com
  | 2049 Century Park East, Suite 2900
3 | Los Angeles, CA 90067
  | Telephone: (310) 556-1801
4 | Facsimile: (310) 556-1802

5 | **POLSINELLI LLP**
  | TIFFANY HANSEN (SBN 292850)
6 | thansen@polsinelli.com
  | Three Embarcadero Center, Suite 2400
7 | San Francisco, CA 94111
  | Telephone: (415) 248-2100
8 | Facsimile: (415) 248-2101

9 | **POLSINELLI PC**
  | JOSH ARTERS, *Pro Hac Vice* Pending
10 | jarters@polsinelli.com
   | 501 Commerce Street. Suite 1300
11 | Nashville, TN 37203
   | Telephone: (615) 259-1510
12 | Facsimile: (615) 259-1573

13 | *Attorneys for Plaintiffs*
   | *DYNAMIC BEHAVIORAL HEALTH LLC*
14 | *dba MONTARE AT THE OASIS*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| DYNAMIC BEHAVIORAL HEALTH LLC dba MONTARE AT THE OASIS, | Case No. |
|---|---|
| Plaintiff, | **COMPLAINT FOR:** |
| v. | (1) **Claim for Benefits and/or Equitable Relief Under ERISA** |
| AETNA HEALTH OF CALIFORNIA, INC., AETNA HEALTH AND LIFE INSURANCE COMPANY, and AETNA LIFE INSURANCE COMPANY, and DOES 1-10, | (2) **Breach of contract** |
|  | (3) **Breach of implied** |
|  | (4) **Implied Covenant of Good Faith and Fair Dealing** |
|  | (5) *Quantum Meruit* |
| Defendants. | (6) **Unfair Business Practices** |

1
COMPLAINT

Plaintiff Dynamic Behavioral Health LLC dba Montare at the Oasis ("Montare Oasis") files this Complaint against Defendants Aetna health of California, Inc. Aetna Health and Life Insurance Company, and Aetna Life Insurance Company (collectively, "Aetna"), and alleges as follows:

## I. INTRODUCTION

1. Montare Oasis is a residential mental health facility based in Tarzana, California. Its mission is to provide mental health care services to individuals so that they can return to their families and communities as productive and contributing members of society. Montare Oasis brings this action to redress Aetna's failure to pay claims for reimbursement related to mental health care services furnished to Aetna members and insureds between December 2023 and December 2024 (the "Disputed Claims")[1], and Aetna's ongoing refusal to process and pay those claims in the ordinary course of business, based on a faulty and punitive audit and the imposition of a "flag" that automatically denied Montare Oasis' claims for payment. Currently, Aetna owes in excess of $990,000.00 in billed charges for medically necessary and authorized healthcare services provided to Aetna members and insureds in connection with the Disputed Claims.

2. Montare Oasis has made **twelve** separate attempts to engage Aetna in discussion about the audit and nonpayment, dating back to when Montare Oasis first learned it had been "flagged," on June 28, 2024. However, Aetna has completely ignored every one of Montare Oasis' attempts to address the matter to try to reach resolution.

3. While Montare Oasis had been hopeful that it could resolve this dispute without the need for litigation, Aetna's complete "radio silence" has left Montare Oasis with no choice but to file this lawsuit.

---

[1] To preserve patient confidentiality, Montare Oasis will provide, via encrypted electronic transmission, a list of the Disputed Claims at issue in this lawsuit upon Aetna's counsel's entry of an appearance and, if necessary, will file with the Court upon the entry of an appropriate protective order.

## II. PARTIES

4. Plaintiff Dynamic Behavioral Health dba Montare Oasis is a California limited liability company with its principal place of business located in Los Angeles, California.

5. Plaintiff is informed and believes and based thereon alleges that Defendant Aetna Health of California, Inc. is a for-profit corporation that is licensed to do business, and does business, in the State of California, including in the County of Los Angeles, and is a licensed health care service plan pursuant to the Knox-Keene Act, Section 1340 *et. seq.* of the Health and Safety Code.

6. Plaintiff is informed and believes and based thereon alleges that Defendant Aetna Health and Life Insurance Company is a for-profit corporation organized and existing under the laws of the State of Connecticut, but with permission to conduct business in the State of California, and which does conduct business in the State of California, including in the County of Los Angeles.

7. Plaintiff is informed and believes and based thereon alleges that Defendant Aetna Life Insurance Company is a Connecticut corporation that has permission to conduct business in the State of California, and that does conduct business in the State of California, including in the County of Los Angeles, and that insures and/or administers medical benefits for medical benefit plans, most of which are sponsored and maintained by employers, including throughout California.

8. The defendants named herein shall be referred to collectively as "Aetna," which is a brand name used for products and services provided by one or more of the Aetna group of subsidiaries that offer, insure, underwrite, and/or administer benefits. When used in this Complaint, "Aetna" includes all Aetna subsidiaries owned and controlled by any of the named Defendants whose activities are interrelated and intertwined with them. Montare Oasis is informed and believes, and based thereon alleges, that due to the manner in which they function, all of the Defendants are functional ERISA fiduciaries and, as such, they must comply with fiduciary standards.

"Aetna" refers to all predecessors, successors and subsidiaries of the named Aetna Defendants to which these allegations pertain.

9. The true names and capacities of the Defendants sued herein as DOES 1-10 are unknown to Montare Oasis at this time, and Montare Oasis therefore sues such Defendants by fictitious names. Montare Oasis is informed and believes that the DOES are those individuals, corporations and/or businesses or other entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Montare Oasis for services, as alleged herein. The Complaint will be amended to allege the DOES' true status and capacities when they have been ascertained.

### III.  JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States. Specifically, as alleged herein, Montare Oasis brings this action for relief pursuant to sections 502(a)(1)(B) and 503(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), and to enforce rights under section 502(e) and (f) of ERISA, 29 U.S.C. § 1132(e).

11. This Court also has subject matter jurisdiction over Montare Oasis' state law claims for relief as such claims arise from a nucleus of facts common to both the state law and ERISA claims. *Nishimoto v. Federman Bachrach & Assoc.*, 903 F.2d 709 (9th Cir. 1990).

12. The Central District of California is a proper venue for this action pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted occurred in this Judicial District.

### IV.  BACKGROUND FACTS

13. Montare Oasis is a residential mental health care provider that specialized in treating complex psychiatric conditions in an environment that fosters healing wellness, and the ability to thrive. Montare Oasis has earned The Joint

Commission's Gold Seal of Approval® for Behavioral Health Care Accreditation. The Gold Seal is the highest form of accreditation that a treatment center can receive and is a symbol of quality that reflects Montare Oasis' commitment to providing safe and effective care to its patients.

14. There is a critical need for access to the mental health care services Montare Oasis provides its patients. Timely access to life-sustaining and life-saving treatment for mental health disorders is critical to preventing suicide and allowing people to achieve long-term mental health and to return to their communities as healthy, productive members of society.

15. Individuals purchase health insurance to help cover the costs of health care, including the costs of mental health treatment. Indeed, health insurance is supposed to provide people with access and options for life-sustaining and life-saving health care, while preventing individuals from experiencing financial crises.

16. Historically, however, health plans and issuers covered treatment for mental health conditions less favorably than treatment for physical health conditions, including higher cost-sharing obligations (i.e., copayments, deductibles, and/or coinsurance) for patients, more restrictive limits on the number of inpatient days and outpatient visits, and more onerous prior authorization requirements.

17. Congress addressed this unequal treatment with various laws. The Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA), codified at 42 U.S.C. § 300gg-26, prohibits most plans governed by ERISA from imposing different treatment limits, cost-sharing, and in-network and out-of-network coverage on mental health treatment than are imposed on other health care services.

18. Furthermore, ERISA requires fiduciaries to act solely in the interests of plan participants and beneficiaries, and to decide claims for health care benefits in accordance with plan documents under a full and fair procedure. For example, ERISA requires: (a) that each employee benefit plan maintain "reasonable procedures"

governing the processing of claims; (b) that claims procedures contain certain processes designed to ensure that benefit determinations are made consistently and in accordance with governing plan documents; and (c) that providers be informed of the specific reasons for adverse benefit determinations and be given the opportunity for a full and fair review. *See* 29 C.F.R. §§ 2560.503-1(m)(4) (defining "adverse benefit determination" to include "a denial, reduction, or termination of, or failure to provide or make payment (in whole or in part) for, a benefit…."); 2560.503-1(g)(1)(ii) (requiring that an adverse benefit determination provide a "reference to the specific plan provisions on which the determination is based"); 2560.503-1(g)(1)(i), (v)(A) (providing that the content of a notice of adverse benefit determination set forth "[t]he specific rule, guideline, protocol, or other similar criterion" relied upon in making the adverse benefit determination; 45 C.F.R. § 147.136(b)(ii)(E)(3) (the issuer of an adverse benefit determination must include a "description of the issuer's standard, if any, that was used in denying the claim, including a discussion of the decision with respect to any final internal adverse benefit determination").

19. The State of California has its own Mental Health Parity Act ("MHPA"), codified in Insurance Code Section 10144.5 and health and Safety Code section 1374.72, which requires mental health care coverage to be provided "under the same terms and conditions applied to other medical conditions." California law also requires health care plans to "provide all covered mental health and substance use disorder benefits in compliance with the [MHPAEA] and all rules, regulations, and guidance issued" pursuant to federal laws.

20. Moreover, under California's Knox-Keene Act, health care service plans are prohibited from engaging in unfair payment patterns, including engaging in demonstrable and unfair patterns of "reducing the amount of payment or denying complete and accurate claims." Cal. Health & Safety Code § 1371.37; *see also* 28 C.C.R. § 1300.71(a)(8) ("A 'demonstrable and unjust payment pattern' or 'unfair payment pattern' means any practice, policy or procedure that results in repeated

delays in the adjudication and correct reimbursement of provider claims").

21. Additionally, the Patient Protection and Affordable Care Act of 2010 ("PPACA"), codified at 42 U.S.C. §§ 18001, *et seq.*, requires a range of health policies to provide a core package of essential health benefits, including mental health and substance use disorder services. 42 U.S.C. § 18022.

22. Despite these statutory requirements, Aetna is engaged in unfair, unreasonable, and incomplete practices and decisions that have resulted in the unlawful denial and/or underpayment of Montare Oasis' services.

23. There were during the relevant time period no express written contracts between Montare Oasis and Aetna governing reimbursement for care rendered by Montare Oasis to Aetna's members.[2] Therefore, Montare Oasis was a "non-participating" or "out-of-network" provider when providing care to Aetna's members. Despite this status, applicable law still required Aetna to provide coverage and make payment for the out-of-network services provided by Montare Oasis. Moreover, for all of the affected claims at issue, and as is its custom and practice, Montare Oasis obtained a verification of benefits and/or prior-authorization from Aetna to perform the mental health care services for which the pertinent claims for payment relate.

24. Furthermore, Montare Oasis is the assignee of benefits under those health benefits plans and/or insurance policies pursuant to assignments of benefits executed by Aetna's members and insureds. Specifically, when a patient obtains treatment from Montare Oasis, the patient executes an assignment of benefits agreement as part of the registration process. These assignments of benefits authorize Montare Oasis to "stand in the shoes" of the patient, to pursue payors like Aetna for reimbursement, including challenges to denials, consistent with the terms of the patient's plan benefits.

25. In or about the final week of June 2024, Montare Oasis received a letter

---

[2] Montare Oasis and Aetna have since entered into a Facility Agreement with effective date of April 1, 2025.

7
COMPLAINT

from Aetna requesting medical records as part of a routine audit. The letter was dated March 14, 2024, and stated that Aetna had already made "several attempts" to request those same records. However, Montare Oasis had never previously seen this letter until June; nor had it been made aware of any prior requests for the records. The letter also advised that Montare Oasis had been "flagged" for "pre-payment review," meaning that any claims for payment using "HCPC Code H0018" – the standard billing code for reimbursement of a single day of residential mental health care, which is Montare Oasis' "bread and butter" mental health care service – would be paid by Aetna only after a review of the associated medical records (whereas this is not the case for Aetna, or any insurance company, in the ordinary course of business).

26. On June 28, 2024, Montare Oasis (through its authorized billing representative) immediately reached out by email to the author of the March 14th letter, Aetna Special Investigations Unit investigator Kim E. Lajoie, to explain that Montare Oasis had only just received the records request, and that Montare Oasis was prepared to make an "all hands on deck" effort to collect and produce the requested records as quickly as possible. Montare Oasis' email also requested a telephone call with Ms. Lajoie, to discuss the "flag" that had been imposed to stop payment on Montare Oasis' claims. Montare Oasis immediately began gathering the requested records, and sent them to Aetna as requested.

27. Unfortunately, for whatever reason, Aetna chose to ignore not only Montare Oasis' June 28th email, but also each and every subsequent outreach attempt to discuss the audit and imposition of the flag. For example:

28. On <u>July 3rd</u>, Montare Oasis' outside biller followed-up with Ms. Lajoie by email because she had received no response;

29. On <u>July 19th</u>, the same outside biller emailed Ms. Lajoie again, advising that Montare Oasis had sent the medical records to Aetna as requested, providing tracking information for the records, and requesting confirmation that the records were received;

a. On July 22nd, Montare Oasis sent another follow-up email, this time to Katie Suttmeier, a different investigator in the same SIU department as Ms. Lajoie, with whom Montare Oasis had worked previously;

b. On August 7th, Montare Oasis sent yet another email to Ms. Lajoie;

c. On August 20th, Montare Oasis' biller tried calling the SIU department by telephone, but the Aetna representative refused to provide Ms. Lajoie's direct line, and also would not disclose the general number for the SIU department;

d. On August 30th, Montare Oasis emailed Ms. Lajoie once more, this time from a different email address, believing Ms. Lajoie might be more likely to respond to an email coming from that address instead;

e. On October 9th, Montare Oasis' outside legal counsel sent a letter to Ms. Lajoie, copying a supervisor within the SIU department, Erin Gardner, as well as a member of Aetna's legal team, Grant Beiner;

f. On October 17th, Montare Oasis' legal counsel sent a follow-up email to Ms. Lajoie, Ms. Gardner, and Mr. Beiner;

g. On October 21st, Montare Oasis' legal counsel left a voicemail for Ms. Gardner, requesting that she call him back to address the issues raised in the October 9th letter;

h. On October 21st, Montare Oasis' legal counsel also attempted to leave a voicemail for Mr. Beiner, but it was unclear whether his voicemail was operative;

i. On October 23rd, Montare Oasis' legal counsel sent another follow-up email to Ms. Lajoie, Ms. Gardner, and Mr. Beiner;

///

    j.  On <u>October 23rd</u>, Montare Oasis' legal counsel also left another voicemail message for Ms. Gardner.

30. In total, Montare Oasis has made **a dozen separate attempts** to contact Aetna to discuss the audit and imposition of a flag that has denied claims that would ordinarily be paid in the ordinary course of business – yet, to date, Aetna has chosen to completely ignore Montare Oasis' efforts.

31. In the meantime, Montare Oasis has continued to provide mental health care <u>services</u> to Aetna members and insureds, and to submit claims for payment to Aetna. Given the flag that has been imposed, and consistent with the requirements set forth in Ms. Lajoie's initial letter dated Mar. 14th, Montare Oasis has submitted each claim along with all medical records necessary to support the necessity and validity of the services for which it seeks payment – at substantial expense.

32. However, even after medical records have been submitted, Aetna has routinely <u>denied</u> Montare Oasis' claims for payment, without valid justification or explanation. Moreover, in its denials, Aetna has not challenged Montare Oasis's right to benefits under the applicable health plans based on the applicability of any anti-assignment provision. To date, claims for reimbursement for medically necessary, authorized mental health care services provided to Aetna members and insureds, totaling in excess of $1,100,000, remain unpaid and owing.

## V. CAUSES OF ACTION

### COUNT I

**Claim for Benefits and/or Equitable Relief Under ERISA**

33. <u>Montare</u> Oasis restates the allegations above as if fully stated herein.

34. This is a claim to recover benefits, enforce rights, and clarify rights to benefits <u>pursuant</u> to 29 U.S.C. § 1132(a)(1)(B), and/or for equitable relief pursuant to 29 U.S.C. § 1132(a)(3).

35. Section 502(a)(1)(B) of ERISA allows a participant or beneficiary covered by a welfare benefits plan to sue to "recover benefits due . . . under the terms

of his plan, to enforce rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Furthermore, Section 502(a)(3) of ERISA allows a participant or beneficiary covered by a welfare benefits plan to sue to "(A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

36. Montare Oasis has standing to pursue claims under ERISA as the authorized representative and assignee of benefits for its patients who were members of ERISA plans. Therefore, Montare Oasis is entitled, in its capacity as assignee, to recover benefits due under such plans. Furthermore, to the extent any relevant member ERISA benefit plan includes an anti-assignment provision, Aetna has waived its right to enforce any such anti-assignment provision by failing to raise the provision as "a reason for a benefits denial during the administrative process" when Aetna knew that Montare Oasis was "request[ing] payment pursuant to a clear and unambiguous assignment." *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014) (quotations omitted). Furthermore, Montare Oasis has Article III standing as an assignee. *See id.* at 1291 ("[I]t is black-letter law that an assignee has the same injury as its assignor for purposes of Article III.").

37. Aetna has breached the terms of ERISA plan agreements by refusing to pay for out-of-network behavioral health claims as required by the plan agreements. Montare Oasis is informed and believes, and based thereon alleges, that Aetna breached the ERISA plan agreements by making claims determinations (i.e., adverse benefit determinations as defined under ERISA) that had no basis in the terms of the plans, without valid evidence or information to substantiate such determinations, and in an unreasonable and arbitrary manner.

38. Montare Oasis has exhausted administrative remedies under the ERISA plans at issue. For the claims subject to ERISA, Montare Oasis has either submitted

11
COMPLAINT

timely appeals to Aetna, or is excused from exhausting administrative remedies because Aetna failed to follow claims procedures required by ERISA and its implementing regulations, including by refusing to acknowledge or respond to at least twelve separate inquiries from Montare Oasis. *See* 29 C.F.R. § 2560.503-1.

39. ERISA requires plan administrators to provide adequate notice in writing to plan members of adverse benefit determinations, and to afford members a reasonable opportunity for a full and fair review of their adverse benefit determinations. 29 U.S.C. § 1133. Aetna is, individually and/or collectively, a "plan administrator" within the meaning of that term under ERISA. Aetna is designated as the plan administrator for ERISA plans, or it otherwise acts in the role of plan administrator with the discretion generally afforded to a plan administrator. As such, Montare Oasis is entitled to the protections of 29 U.S.C. § 1132.

40. Although Aetna was obligated to do so, it failed and refused to provide a "full and fair review" to Montare Oasis, as the assignee of the affected patients' claims, and otherwise failed to make necessary disclosures to Aetna pursuant to 29 U.S.C. § 1133 and the regulations promulgated under ERISA.

41. Alternatively, exhaustion of administrative remedies was not required because it was futile under the circumstances. Montare Oasis has repeatedly attempted to engage with Aetna, to challenge Aetna's unreasonable audit, flagging, and subsequent claim denials, but Aetna has failed and refused to modify its behavior, or even to respond to Montare Oasis's repeated attempts to address the issues. Any further attempts by Montare Oasis to challenge Aetna's behavior as alleged herein would be futile.

42. Aetna's conduct constitutes a breach of its ERISA plans and an abuse of discretion, and it has denied Montare Oasis benefits to which it Montare Oasis entitled as assignee.

43. Aetna's failure to pay Montare Oasis what Aetna was obligated to pay for the out-of-network services provided to the affected patients, as well as Aetna's

ongoing "flagging" of Montare Oasis claims, was (on information and belief) motivated by Aetna's desire to achieve maximum profits, and it has resulted in a direct financial benefit to Aetna. Consequently, these actions constitute a conflict of interest, bad faith, and discrimination against Montare Oasis as an out-of-network provider.

44. Aetna's decision to flag Montare Oasis, as well as Aetna's denials, misclassifications, and/or underpayments of medically necessary services rendered to the affected patients, should be reversed because these determinations were wrong, incorrect, improper, unlawful, unreasonable, not based on any evidence, arbitrary and/or capricious, and constitute an abuse of discretion.

45. As assignees of the benefits to which the affected patients are entitled pursuant to their ERISA plans, Montare Oasis demands recovery of benefits and all other relief available pursuant to 29 U.S.C. § 1132(a)(1)(B).

## COUNT II

### Breach of Contract

46. Montare Oasis restates the allegations above as if fully stated herein.

47. This is an action for breach of contract as to non-ERISA health plans and insurance policies.

48. Prior to each claimed non-payment and/or underpayment related to this action, Aetna and each of its members who sought care with Montare Oasis entered into valid and enforceable agreements for health care services supported by valuable consideration.

49. The valid and enforceable agreements require Aetna to pay for the out-of-network mental health care services Montare Oasis provides.

50. Montare Oasis is the assignee of benefits under those agreements pursuant to the valid and enforceable assignments of benefits executed by Aetna's members.

51. Montare Oasis provided medically necessary services to Aetna's members enrolled in health plans that are not governed by ERISA.

52. Montare Oasis submitted bills for these medically necessary services to Aetna.

53. Aetna failed to perform its contractual obligations by failing to pay Montare Oasis' claims pursuant to the terms of the applicable health plans and/or applicable law.

54. Aetna's failure to pay Montare Oasis the full amounts owed, as assignee of Aetna's members' benefits, constitutes a breach of contract.

55. As a direct and proximate result of Aetna's breach of contract, Montare Oasis has suffered damages in an amount to be proven at trial.

## COUNT III

### Breach of Implied Covenant of Good Faith and Fair Dealing

56. Montare Oasis restates the allegations above as if fully stated herein.

57. An implied covenant of good faith exists in every contract under California law. The covenant supplements express contractual covenants to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.

58. An insurer breaches the implied covenant of good faith and fair dealing under California law when it unreasonably withholds benefits due under the insurance contract.

59. Montare Oasis is the assignee of benefits under those insurance contracts pursuant to the assignments of benefits executed by Aetna's members.

60. Aetna has engaged in conduct that frustrates Montare Oasis's rights to the benefits of the insurance policies between Aetna and its members and insureds.

61. As a direct and proximate result of Aetna's conduct, Montare Oasis has suffered damages in an amount to be proven at trial.

## COUNT IV

### *Quantum Meruit*

62. Montare Oasis restates the allegations above as if fully stated herein.

63. This is an action for *quantum meruit* seeking the reasonable value for services rendered.

64. Montare Oasis provided treatment to Aetna's members with the expectation, which was fully and clearly understood by Aetna, that Montare Oasis would be compensated for such services. Moreover, Montare Oasis provided treatment along with the expectation of reimbursement based upon the prior course of conduct between the parties.

65. Aetna was aware that Montare Oasis did not provide services for free, and that it would submit claims for reimbursement and expect to be compensated. Aetna was also aware during the relevant time period that Montare Oasis was not a contracted provider that had agreed to accept pre-negotiated rates.

66. Montare Oasis is entitled to the fair and reasonable value of the services provided. However, Aetna has failed and refused to reimburse Montare Oasis the fair and reasonable value of its services.

67. As a result, Montare Oasis seeks an order awarding it the reasonable value of the services it furnished to Aetna's members and insureds.

## COUNT V

### Unfair Business Practices

68. Montare Oasis restates the allegations above as if fully stated herein.

69. This is an action under California's Unfair Competition Law ("UCL"). *See* Cal. Bus. & Prof. Code §§ 17200-17210

70. The purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. To that end, the UCL takes aim at "unfair competition," a term defined to "include any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The phrase "any unlawful . . . business act or practice" in effect "'borrows' rules set out in other laws and makes violations of those rules independently actionable." *Zhang v. Superior Ct.*, 57 Cal. 4th 364, 370 (2013). However, a practice

may violate the UCL even if not specifically proscribed by some other law. *Id.*

71. The UCL confers standing on a private plaintiff, like Montare Oasis here, to seek relief under the statute if that plaintiff has "suffered injury in fact" and "lost money or property as a result of the unfair competition" at issue.

72. A prevailing plaintiff under the UCL is generally limited to injunctive relief and restitution. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999); *see also* Cal. Bus. & Prof. Code § 17203.

73. Aetna has engaged and continues to engage in unfair and unlawful business practices in California by practicing, employing, and utilizing the practices outlined herein.

74. Aetna has engaged in conduct that violates the California Unfair Insurance Practices Act, Cal. Ins. Code §§ 790, *et seq.* ("UIPA"). Such unlawful acts or practices include, but are not necessarily limited to, knowingly: "Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies"; "Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies;" "Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured"; and "Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims in which liability has become reasonably clear." Cal. Ins. Code § 790.03(h).

75. Aetna has engaged in conduct that also violates obligations imposed by other statutes or California common law. *See Zhang*, 57 Cal. 4th at 369 (2013) (holding that, although "a litigant may not rely on the proscriptions of section 790.03 as the basis for a UCL claim, . . . when insurers engage in conduct that violates both the UIPA and obligations imposed by other statutes or the common law, a UCL action may lie.").

///

76. As a result of Aetna's conduct, Montare Oasis has suffered an injury in fact.

77. Montare <u>Oasis</u> does not have an adequate remedy at law, and therefore seeks relief under the UCL, as an alternative cause of action.

78. Montare <u>Oasis</u> seeks an order awarding restitution against Aetna for all money acquired by means of unfair competition.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Montare Oasis prays for the following relief:

A. A judgment in favor of Montare Oasis against Aetna for all claims asserted herein;

B. A judgment awarding Montare Oasis benefits and all other relief available pursuant to 29 U.S.C. § 1132(a)(1)(B);

C. A judgment awarding Montare Oasis damages for Aetna's breach of contract;

D. A judgment awarding Montare Oasis damages for Aetna's breach of the implied covenant of good faith and fair dealing;

E. A judgment awarding Montare Oasis the reasonable value of their services rendered to Aetna's members and insureds;

F. A judgment awarding Montare Oasis restitution against Aetna for all money acquired by means of unfair competition; and

G. Such other and further relief to which Montare Oasis may show itself entitled upon a hearing of this cause.

Dated:  April 25, 2025                    **POLSINELLI LLP**

By:  /s/ Tiffany Hansen
Zachary E. Rothenberg
Tiffany Hansen
Josh Arters, *Pro Hac Vice* Pending

*Attorneys for Plaintiffs*
*DYNAMIC BEHAVIORAL HEALTH LLC*
*dba MONTARE AT THE OASIS*

17
COMPLAINT